STROOCK & STROOCK & LAVAN LLP
Kenneth Pasquale
180 Maiden Lane
New York, New York 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

-and-

URBAN JUSTICE CENTER
Harvey Epstein, Esq.
123 William Street, 16th Floor
New York, New York 10038
Telephone: (646) 459-3009
Facsimile: (212) 533-4598

*Counsel for Tenant-Petititoners Wilmer Rodriquez, Monserrate Rodriguez, Lilian Jesus Vasquez, Florencio Jesus Villa, England Torres, Caridad Maldonado, Rochelle Johnson, Rev. Leander Hardaway, Ikuko Hardaway, Petra Ramos, Evelyn Garcia, Maria Rodriguez, Jose Diaz, Irina Diaz, Yvonne Pagan, Maria L. Lopez, Zenaido Rosendo, Marialuisa Vidal, Mary L. Martinez, Edna Rivera, Katherine Rivera, Maria Santana, Clara Wainwright, Bobby Wainwright, Richard Wainwright, Cerise Campbell, Jose Rivera, Margarita Ramos and Juan Rodriguez*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>919 PROSPECT AVE LLC,<br><br>                               Debtor. | Chapter 11<br>Case No. 16-13569 (SCC) |
| RODRIGUEZ, *et al.*,<br><br>                            Petitioners,<br>   v.<br><br>919 PROSPECT AVE LLC, *et al.*,<br><br>                            Respondents. | Adv. Pro. No. 17-01009 (SCC) |

**TENANT-PETITIONERS'
EMERGENCY MOTION FOR ABSTENTION AND REMAND**

Tenant-Petititoners ("Tenants") Wilmer Rodriquez, Monserrate Rodriguez, Lilian Jesus Vasquez, Florencio Jesus Villa, England Torres, Caridad Maldonado, Rochelle Johnson, Rev. Leander Hardaway, Ikuko Hardaway, Petra Ramos, Evelyn Garcia, Maria Rodriguez, Jose Diaz, Irina Diaz, Yvonne Pagan, Maria L. Lopez, Zenaido Rosendo, Marialuisa Vidal, Mary L. Martinez, Edna Rivera, Katherine Rivera, Maria Santana, Clara Wainwright, Bobby Wainwright, Richard Wainwright, Cerise Campbell, Jose Rivera, Margarita Ramos and Juan Rodriguez, by their undersigned counsel, hereby respectfully submit this motion (the "Motion") for an order pursuant to 28 U.S.C. § 1334(c) and § 1452(b), abstaining and remanding this proceeding to the Civil Court of the City of New York, Bronx County, Housing Part H (the "Housing Court").

In support of the foregoing, the Tenants respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      This is a proceeding (the "Housing Court Proceeding") pursuant to Article 7A of the New York State Real Property Actions and Proceedings Law ("RPAPL"), in which Tenants seek, *inter alia*, to remedy myriad immediately hazardous conditions that pose a danger to the health, life and safety of tenants and occupants at 919 Prospect Avenue in the Bronx (the "Building").  Facing an imminent January 26, 2017 trial date in the Housing Court Proceeding, Tenants' landlord, Debtor-Respondent 919 Prospect Ave LLC (the "Landlord") – whose managing member, Respondent Seth Miller, is listed as one of the "Worst Landlords" in New York City by the New York City Public Advocate's Office[1] – filed in bad faith for bankruptcy

---

[1] See http://landlordwatchlist.com/index.html (listing Seth Miller as number 36 of "The 100 Worst Landlords in New York City").  The building at 919 Prospect Avenue, specifically, is

2

protection in this Bankruptcy Court. The Landlord's transparent strategy was to take advantage of the automatic bankruptcy stay to protect it from adverse rulings in the Housing Court Proceeding and, further, to remove the Housing Court Proceeding to federal court, essentially to obtain a stay of the trial and avoid judgment.

2.      No legal basis exists for the Housing Court Proceeding to remain in the Bankruptcy Court.  First, this is not a core bankruptcy proceeding.  At best (assuming the Landlord's bankruptcy case is not promptly dismissed as a bad faith filing), this proceeding is "related to" to the bankruptcy case, which is to say that this is a *non-core* proceeding.  A core proceeding, by contrast, is one "that clearly invoke[s] substantive rights created by federal bankruptcy law," or otherwise "would have no existence outside of the bankruptcy."  In re Robert Plan Corp., 777 F.3d 594, 596-97 (2d Cir. 2015).  This state-law real property proceeding satisfies neither test:  It "does not depend on the bankruptcy for its existence, nor does it involve an administrative matter that arises only in bankruptcy cases."  Id.   And because this action raises only non-core claims that can and would be timely adjudicated in the Housing Court – indeed, the case is ready for trial – Section 1334(c)(2) *requires* federal courts to abstain from hearing it.

3.      Second, even if abstention were not mandatory (and it is), the Housing Court Proceeding should be equitably remanded to the Housing Court for trial.  There is no efficiency to be gained by adjudicating the purely state law issues concerning the condition of the Building in Bankruptcy Court, especially when the Housing Court is prepared to hold a trial on January 26.  The prejudice to the Tenants from the removal is patent because it unnecessarily delays the ultimate judgment in the proceeding and forces them to continue to live in the Building's

---

listed as one of, if not the worst, of "The 20 Worst Buildings in the Bronx". See http://landlordwatchlist.com/bronx.html.

despicable conditions, unrepaired by the Landlord. Upon remand, however, the Tenants (and, indeed, the Landlord and other Respondents) will be able to have their day in court and secure emergency relief at the earliest possible time.

4. Accordingly, this Bankruptcy Court should abstain from hearing the Housing Court Proceeding and remand it to the Housing Court, where it was originally filed.

## STATEMENT OF FACTS AND PROCEDURAL POSTURE

5. On December 7, 2016, 29 Tenants living in 19 apartments at 919 Prospect Avenue Bronx, NY 10459 (the "Building") filed the Housing Court Proceeding against Respondents, including the Landlord, its managing agent, Aegis Realty Management Corp., and managing member, Seth Miller. The Tenants in the Housing Court Proceeding seek to cure exigent hazardous housing code violations that have posed, and continue to pose, a danger to the health, life and safety of tenants and occupants at the Building. On the date of filing, and as of today, the New York City Department Housing Preservation and Development ("DHPD"), the New York City Department of Buildings ("DOB"), the Environmental Control Board ("ECB") of DOB and the Department of Health and Mental Hygiene ("DOHMH") had collectively placed many hundreds of violations on the Building.[2] See Declaration of Stephanie Rudolph in Support of Tenant-Petitioners' Emergency Motion For Abstention and Remand, dated January 19, 2017 ("Rudolph Dec."), Ex. A, Petition at Ex. B (DOB, ECB violations); Ex. E (DHDP violations); Ex. G (DOHMH violations). For example, there are currently 328 open violations on the DHPD website, over 100 of which are "Class C" immediately hazardous violations, which the Landlord must cure within 24 hours.

---

[2] These agencies are also Respondents in the Housing Court Proceeding. DHPD has its own litigation against the Landlord pending in Bronx Housing Court.

4

6.      Although the number of DPHD, DOB, ECB and DOHMH violations at the Building is staggering, the violations of greatest concern relate to illegal construction, the release of toxic lead dust during construction, the removal of tenants' entire bathrooms for weeks and months at a time, the lack of gas service, the lack of stoves, a broken front door, lead paint, infestation, and harassment by the Landlord and its agents. See Rudolph Dec., Ex. A, Petition at ¶¶ 20-58; 59-82.  As alleged in the Petition, the toll that these conditions have taken on Tenants and their families is also staggering.  Several children have tested positive for lead poisoning, tenants have difficulty breathing, families with young children and infants have been left with no bathroom, and have resorted to using buckets. Indeed, at this time, many tenants have no gas service, face escalating harassment from the Landlord's agents, and to be exposed to lead paint and dust hazards. Id. at ¶¶ 40-53. The building is crumbling and the Landlord has, not surprisingly, seen an increase in housing code violations since the commencement of the Housing Court Proceeding.  See Rudolph Dec. at ¶ 8.

7.      These conditions, as recorded by the New York City Public Advocate, earned Seth Miller, the Landlord's managing member, the ranking as one of the "Worst Landlords" in New York City, and the Building is ranked as one of, if not the worst, in the Bronx. Rudolph Dec., Ex. A, Petition at Ex. I; http://landlordwatchlist.com/bronx.html.  The building has also been in DHPD's Alternative Enforcement Program for three years (since 2013), a  program reserved for the worst 200 buildings in all of New York City.  See Rudolph Dec., Ex. A, Petition at Ex. H.

8.      The Housing Court Proceeding was brought pursuant to RPAPL Article 7A, which is intended to offer tenants emergency relief and a trial must be commenced within five days from the first court appearance. See N.Y. RPAPL § 774.  Accordingly, on December 16,

5

2016, Tenants appeared in Bronx Housing Court for the first time in the Housing Court Proceeding. See Rudolph Dec., Ex. B. Given the approaching holidays and the Landlord's expressed intention to file certain pre-trial motions, Tenants agreed to the Landlord's request for a longer adjournment than permitted by statute, in exchange for the Landlord agreeing to address certain emergency conditions. Pursuant to the parties' interim so-ordered agreement, the Landlord agreed to address a number of emergency conditions, such as the abatement of lead paint and dust, the discontinuance of hazardous construction, and the provision of heat and hot water as required by law. Id.

9. The Housing Court scheduled the matter for trial, beginning on January 26, 2017 at 2:00 p.m. See Rudolph Dec., Ex. B. Tenants therefore began preparing for trial.

10. Beginning on December 19, 2016, however, it became apparent that the Landlord's agents were continuing to engage in illegal construction, further endangering Tenants and their families. Unlicensed workers, for example, entered apartment 2C, where a young child resides, under the guise of "fixing a hole" in the wall, and began demolishing the hallway wall without taking any precautions to abate the lead paint in the unit. See Rudolph Dec., Ex. C at ¶¶ 5-9. The DOHMH and DPHD responded and both agencies placed violations. Id. at ¶ 6. Given these and other dangerous work practices, the Tenants filed an emergency order to show cause in the Housing Court, to be served by December 22, 2016 and returnable December 23, 2016 at 9:30 a.m. Id.

11. The Landlord's response was prompt and in bad faith. At approximately 4:55 p.m. on December 22, 2016, on the eve of the emergency court appearance, the Landlord, by counsel, advised Petitioner's counsel that it had filed for bankruptcy, and that Tenants could not go forward on their emergency motion for relief from illegal and dangerous conditions due to the

"automatic stay." See Rudolph Dec. at ¶ 5. The parties nevertheless appeared in Housing Court on December 23 and, given the exigent hazardous conditions, attempted to resolve the issues raised in Tenants' order to show cause. A so-ordered stipulation of settlement dated December 23, 2016 (see Rudolph Dec., Ex. D), addressed several issues, including the lead paint abatement in apartment 2C. The parties agreed to access dates during the week of December 26, 2016 for lead paint abatement. However, the Landlord subsequently refused to proceed with the work, and the condition remains unabated today.

12. Notwithstanding the existence of the Housing Court Proceeding and the hundreds of violations pending against the Building, the Debtor-Landlord, in its Voluntary Petition (Official Form 201) filed in this Bankruptcy Court [Dkt. No 1], signed under penalty of perjury, denied that it "owned any real property … that needs immediate attention", checking the box "no." The Landlord did not admit in its Petition, as it should have by simply checking the appropriate box, that the Building "poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety", nor did the Landlord describe the hazards that exist at the Building, as a Voluntary Petition requires in these circumstances.

13. On January 10, 2017, the Landlord filed a Notice of Removal of the Housing Court Proceeding in the U.S. District Court for the Southern District of New York (which referenced the bankruptcy case caption). [3] See Rudolph Dec., Ex. E. On January 19, 2017, this proceeding was referred by the district court to this Bankruptcy Court.

---

[3] The Landlord has twice amended the Notice of Removal in an attempt to correct deficiencies identified by the clerk's office.

**ARGUMENT**

**I.   THE COURT IS REQUIRED TO ABSTAIN FROM ADJUDICATING THE HOUSING COURT PROCEEDING PURSUANT TO 28 U.S.C. § 1334(C)(2)**

14.   Simply because a bankruptcy court may have jurisdiction over an action does not mean that it is permitted to hear it. "Section 1334(c)(2) . . . *requires* that bankruptcy courts abstain from hearing . . . non-core, state law claims that can be timely adjudicated in a State forum of appropriate jurisdiction." Stern v. Marshall, 131 S. Ct. 2594, 2619-20 (emphasis added and alterations omitted). A party seeking remand based upon mandatory abstention must establish six elements: "(1) the motion to abstain is timely; (2) the action is based on a state law claim; (3) the action is 'related to' but not 'arising in' a bankruptcy case or 'arising under' the Bankruptcy Code; (4) § 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in state court." Goldstein v. Joseph, 2015 WL 4039851 (S.D.N.Y. 2015), citing Ritchie Capital Mgmt.,L.L.C. v. JPMorgan Chase & Co., No. 14 CIV. 2557 LGS, 2014 WL 5810629, at *6 (S.D.N.Y. Nov. 10, 2014). That statutory mandate controls here. Because Tenants' state-law real property claims do not fall within core bankruptcy jurisdiction and because they can be timely adjudicated in the Housing Court, this Bankruptcy Court is not permitted to hear those claims. The Housing Court Proceeding must be remanded as a matter of law.

15.   *First*, the motion to abstain is timely. The Notice of Removal was filed on January 10, 2017; this motion is filed just over a week later and is plainly timely.

16.   *Second*, the Housing Court Proceeding is based solely upon state law and is brought pursuant to N.Y. RPAPL Article 7A. No federal claims are raised or even implicated by the Petition in the Housing Court Proceeding. See Petition, Ex. A to Rudolph Dec.

8

17. *Third*, Tenants' claims in the Housing Court Proceeding are not core bankruptcy claims. At best for the Landlord, the claims give rise (if at all) only to *non-core*, "related to" jurisdiction: "An action is 'related to' bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" or if it "in any way impacts upon the handling and administration of the bankrupt estate." Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995). Core jurisdiction, by contrast, requires a substantially greater showing. And the distinction matters: It "signals whether mandatory . . . abstention will apply." In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig., 341 F. Supp. 2d 386, 411 (S.D.N.Y. 2004).

18. A proceeding is "core" only if it is one "arising under Title 11" or "arising in a case under Title 11." 28 U.S.C § 157(b)(1); see also Stern, 131 S. Ct. at 2603. A proceeding is the former—that is, it "arises under" title 11—only "if it invokes a substantive right provided by title 11." In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig., 522 F. Supp. 2d 557, 560 (S.D.N.Y. 2007); see also Stoe v. Flaherty, 436 F.3d 209, 217 (3d Cir. 2006) ("Whether a proceeding is a 'core' proceeding that 'arises under' title 11 depends upon whether the Bankruptcy Code creates the cause of action or provides the substantive right invoked.").

19. The Tenants' claims in no way arise under Title 11; to the contrary, they sound solely in Article 7A of the RPAPL.[4] The Tenants' claims were, of course, not "created" by the Bankruptcy Code, nor do the claims involve any substantive bankruptcy right. See, e.g., Frontier Park Co., LLC v. Contreras, 35 F.Supp.3d 264 (E.D.N.Y. 2014)("a summary proceeding seeking a final judgment for possession and a warrant of eviction pursuant to RPAPL Article 7 raises no issue or claim based on federal law."); Goldstein, 2015 WL 4039851 at *5 (eviction proceeding

---

[4] The Landlord in its Notice of Removal asserts, without support and incorrectly, that the Housing Court Proceeding is a core matter. Ex. E to Rudolph Dec.

9

and related actions are "purely state law claims" and ordering mandatory abstention). The only connection between the Housing Court Proceeding and the bankruptcy case is the Landlord, which filed for bankruptcy for the sole and improper purpose of avoiding trial before the Housing Court.

20.     *Fourth*, the Landlord, in its Notice of Removal, relies solely upon 28 U.S.C. § 1334 as the basis for federal jurisdiction over the Housing Court Proceeding.[5] Indeed, no federal question exists and complete diversity is lacking between the parties to the proceeding.

21.     *Fifth*, the Tenants commenced the Housing Court Proceeding in the Housing Court, which action was pending at the time of its removal.

22.     *Sixth*, the Housing Court Proceeding can be timely adjudicated in the state court and, in fact, trial is scheduled for January 26, just days from now. And, RPAPL Article 7 is intended to offer tenants emergency relief, pursuant to RPAPL § 774, and a trial must commenced within five days from the first court appearance. Accordingly, the Housing Court can more promptly and efficiently address the merits of the Tenants' claims than could this Bankruptcy Court: "New York City Housing Court summary proceedings are, by design, speedier than [the] Bankruptcy Court for adjudicating landlord-tenant disputes because of the Housing Court's expertise, resources, and procedural efficiencies." Goldstein, 2015 WL 4039851 at *5, citing In re Taub, 417 B.R. 186, 193 (Bankr. E.D.N.Y. 2009); see also N.Y. City Civ. Ct. Act 110(a), 110(a)(5) (establishing courts for the expeditious enforcement "of state and local laws for the establishment and maintenance of housing standards, including, but not limited

---

[5] The Landlord failed to comply with Local Rule 9027-1 because it claims that the Housing Court Proceeding is core but it failed to state in the Notice whether it consents to the entry of final orders by the bankruptcy court.

10

to, the multiple dwelling law and the housing maintenance code, building code and health code of the administrative code of the City of New York. . .").

23. Accordingly, the mandatory abstention elements are all easily established here. The Housing Court is the appropriate forum to adjudicate the disputes between the parties. "This court sees no reason to substitute the bankruptcy court itself for the Civil Court as the enforcement forum [for a RPAPL Article 7A proceeding], which has special expertise in these matters . . . ." In re Kennise Diversified Corp., 34 B.R. 237, 243 (Bankr. S.D.N.Y. 1983). The Tenants' motion to remand should be granted.

## II. THE HOUSING COURT PROCEEDING SHOULD BE EQUITABLY REMANDED PURSUANT TO 28 U.S.C. § 1452(b)

24. Alternatively, the Housing Court Proceeding should be equitably remanded. 28 U.S.C. § 1452(b) provides that '[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." A court has "broad discretion in conducting the equitable remand analysis." Goldstein, 2015 WL 4039851 at *5, citing CAMOFI Master LDC v. U.S. Coal Corp., 527 B.R. 138, 143 (Bankr. S.D.N.Y. 2015). Courts generally consider the following factors in determining whether to equitably remand an action: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants. See, e.g., Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co., 130 B.R. 405, 407 (S.D.N.Y. 1991).

25. Here, for many of the same reasons governing the mandatory abstention analysis, equitable remand of the Housing Court Proceeding is appropriate. The proceeding will not

11

negatively impact the administration of the bankruptcy case because, as the Landlord concedes, the entire purpose of the bankruptcy case (however improper and in bad faith the filing may have been) is to adjudicate the claims raised by the Tenants. See Affidavit Pursuant to Local Rule 1007, Bankruptcy Dkt. No. 5 at ¶ 12 (noting removal of the Housing Court Proceeding and stating that "Debtor believes that this Court can make the necessary determinations that will allow the Debtor to continue to make the necessary repairs and allow this Debtor to emerge from chapter 11."). The Tenants' claims are purely state law claims, raised in a summary proceeding in a court, the Housing Court, that specializes in resolving such claims.

26. The most significant factor in favor of equitable remand is the prejudice to the Tenants from the removal of the Housing Court Proceeding. Simply put, the Landlord's bankruptcy filing and the removal were improperly designed to stall the Tenants' efforts to force the Landlord to make the necessary repairs to the Building. While the Landlord hides behind the procedural protections of the bankruptcy laws (for as long as it can in the face of the Tenants' efforts), the Tenants continue to live in apartments with toxic lead dust, no bathrooms, the lack of gas service and stoves, a broken front door, lead paint, infestation, and harassment by the Landlord and his agents – all of which Tenants raised and are at issue in the Housing Court Proceeding. See Rudolph Dec., Ex. A, Petition, Parts III and IV.

27. In addition, the Landlord's bad faith bankruptcy filing is a factor that this Court should consider in ordering remand. Indeed, many courts "have found bad faith where a 'debtor possessing a single asset has no realistic chance for rehabilitation of any ongoing business and files a bankruptcy petition in the hopes of gaining relief from another action that essentially involves the resolution of a two-party dispute.'" Pickering v. M&T Mortg. Corp., 2006 WL 2404353 at * 4 (S.D.N.Y. 2006). Remand of the Housing Court Proceeding would enable an

adjudication on the merits and provide the Tenants with the day in court that they have, unfortunately and unnecessarily, been fighting to obtain.

**WHEREFORE**, for the forgoing reasons, Tenants respectfully request that this Bankruptcy Court order mandatory abstention under 28 U.S.C. § 1334(c)(2) or, alternatively, equitable abstention pursuant to 28 U.S.C. § 1452(b), and remand the Housing Court Proceeding to the Housing Court, and for such other and further relief as the Bankruptcy Court may deem just and proper in the circumstances.

Dated: January 19, 2017
      New York, New York

STROOCK & STROOCK & LAVAN LLP

/s/ Kenneth Pasquale
Kenneth Pasquale
180 Maiden Lane
New York, New York 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

-and –

URBAN JUSTICE CENTER
Harvey Epstein, Esq.
123 William Street, 16th Floor
New York, New York 10038
Telephone: (646) 459-3009
Facsimile: (212) 533-4598

*Counsel for Tenant-Petitioners Wilmer Rodriquez, Monserrate Rodriguez, Lilian Jesus Vasquez, Florencio Jesus Villa, England Torres, Caridad Maldonado, Rochelle Johnson, Rev. Leander Hardaway, Ikuko Hardaway, Petra Ramos, Evelyn Garcia, Maria Rodriguez, Jose Diaz, Irina Diaz, Yvonne Pagan, Maria L. Lopez, Zenaido Rosendo, Marialuisa Vidal, Mary L. Martinez, Edna Rivera, Katherine Rivera, Maria Santana, Clara Wainwright, Bobby Wainwright, Richard Wainwright, Cerise Campbell, Jose Rivera, Margarita Ramos and Juan Rodriguez*